**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210479-U

Order filed July 17, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0479 Circuit No. 20-CF-143 |
| | ) | |
| TRESTON A. WALLACE, | ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Presiding Justice Holdridge concurred in the judgment.
Justice Peterson dissented.

_____

**ORDER**

¶ 1    *Held*:  The circuit court erred by denying defendant's request to admit the other-crimes evidence of a nontestifying third party.

¶ 2    Defendant, Treston A. Wallace, appeals his convictions, arguing that the Tazewell County circuit court erred when it denied the admittance of a third party's criminal history into evidence. We vacate defendant's convictions and remand for a new trial.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged by indictment with two felony weapons charges: aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1) (West 2020)) and unlawful use of a weapon by a felon (UUWF) (*id.* § 24-1.1(a)(1)). Prior to trial, defense counsel filed a motion *in limine* requesting the admission of Bobby King's prior criminal convictions for aggravated UUWF, armed robbery, and UUWF, and a previously pending UUWF charge. King was defendant's brother who was present at the time defendant was arrested but had subsequently died while his UUWF charge was pending. The State filed a competing motion *in limine* seeking to bar presentation of the criminal records as King was deceased and could not be a witness at trial. After a hearing on June 20, 2021, the court barred the defense from using or referencing King's criminal history at trial. In doing so, the court noted that such evidence would be prejudicial to the State.

¶ 5        On June 14, 2021, defendant waived a jury and proceeded to a bench trial. Defense counsel renewed her request to admit King's criminal history, which the court noted and denied. At trial, Rebecca Simmons testified that early in the morning on February 23, 2020, she met her friend Breanna Miller and King at a strip club. King asked that they pick up defendant. Simmons was driving the vehicle, and King and defendant were in the backseat. After picking defendant up, Simmons was pulled over for speeding. Defendant instructed her to keep driving but she pulled over. Simmons testified that she kept a taser in her vehicle but no other weapons. Simmons further testified that she did not see King move toward the driver's seat from his position in the rear passenger side of the vehicle. While Simmons believed defendant was seated behind her on the driver's side, she could not identify defendant in court as the person who was seated behind her in the vehicle.

¶ 6        Miller testified that the firearm found in the vehicle during the traffic stop did not belong to her or Simmons. Miller believed it belonged to one of the male individuals in the backseat that night. She also could not identify defendant as the other person in the vehicle. Miller stated that she was intoxicated at the time of the traffic stop.

¶ 7        Officer Garin Johnson testified that he was an officer for the Creve Coeur Police Department on February 23, 2020. Johnson effectuated a traffic stop on Simmons's vehicle for speeding. As he did so, he noticed a furtive movement coming from the backseat on the driver's side, which he described as "flailing of the hands, the head shifting left and right, and then kind of a rocking back and forth motion." Johnson did not include this alleged furtive movement in his police report of the incident. Johnson identified defendant as the person seated behind the driver. Defendant was the only individual in the vehicle unable to provide identification and admitted to possessing cannabis. Johnson stated that King did not move at all during the interaction. Upon searching the vehicle, Johnson found a loaded automatic pistol hidden under a shirt on the floor "close to the rear of the driver's seat." No fingerprints were found on the firearm. When the firearm was examined for DNA and fingerprints, only samples from defendant were sent to the laboratory. King was not eliminated as a suspect.

¶ 8        Officer Zakary Rogy, an officer with the Creve Coeur Police Department, assisted in defendant's arrest. He testified that all the vehicle's occupants, including King, denied ownership of the firearm. Before beginning her cross-examination, defense counsel moved to admit King's criminal history, arguing that the State opened the door for this evidence by eliciting hearsay testimony from Rogy. Counsel argued that the State allowed Rogy to provide hearsay testimony concerning King's denial of ownership of the firearm. The State responded that it could withdraw the question and Rogy's answer. Defense counsel stated that she did not object to the testimony at

the time because it allowed her to again request admission of King's criminal history. The court asked if defendant would object to the State withdrawing the question and answer, and defense counsel stated that the question could be withdrawn "by agreement." The court further stated that it adhered to its original ruling that King's criminal history could not be admitted. Defense counsel asked Rogy how King was eliminated as a suspect. Rogy testified that King had stated the firearm was not his.

¶ 9 Defense counsel did not put on any evidence. Counsel made an offer of proof regarding King's criminal history. The court remarked that it did not admit the criminal history records because they were not relevant. The court found defendant guilty of both counts. In doing so, the court acknowledged that King could have been a codefendant and a joint possessor of the firearm. The court stated,

"King's presence in the general area does not detract from the Defendant's possession of a gun if otherwise proven. *** King wasn't on trial here, but if there had been a co-defendant, and if the issue was whether he possessed a gun, he possibly could have.

There's no decision made here today because it's not important. In other words, from *** King's perspective, he could have been a joint possessor of the gun. I would have found in this evidence that he wasn't, but the argument that the defense makes that *** King could have stashed that as soon as he got in the car after the club doesn't mean that the Defendant did not possess it simultaneously, either. It could have been both."

¶ 10 Defense counsel filed a motion for a new trial arguing that the court erred in denying her request for King's criminal history to be admitted into evidence. The court denied the motion and

4

sentenced defendant to 8½ years' imprisonment. The court also denied defendant's motion to reconsider sentence.

¶ 11                                    II. ANALYSIS

¶ 12        On appeal, defendant argues that the circuit court erred in excluding evidence of King's criminal history as it was relevant to the defense's theory that the firearm found in the vehicle did not belong to defendant. "Evidentiary rulings are within the sound discretion of the trial court and will not be disturbed on review unless the trial court has abused its discretion." *People v. Cruz*, 162 Ill. 2d 314, 331 (1994). Relevant evidence is admissible unless otherwise provided by law. *People v. Kirchner*, 194 Ill. 2d 502, 539 (2000). Relevant evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011).

¶ 13        The general rule is that a court may exclude relevant evidence if its probative value is outweighed by unfair prejudice, jury confusion, or delay. *Cruz*, 162 Ill. 2d at 348. This "rule is designed to eliminate prejudice against the defendant caused by the State's introducing evidence of his other crimes." *People v. Turner*, 373 Ill. App. 3d 121, 127-28 (2007). As a derivative of this rule, evidence of other crimes is usually not admissible unless it is relevant for any purpose other than to show the propensity to commit crimes. *Cruz*, 162 Ill. 2d at 348. "However, in cases where the defendant presents the evidence, the risk of prejudice to the defendant disappears. Further, admission of other-crimes evidence of a nondefendant cannot be prejudicial to the nondefendant, because he or she is not a party to the case in which the evidence is offered." *Turner*, 373 Ill. App. 3d at 129-30. Therefore, in cases such as the instant case, the general rule against admission of other-crimes evidence does not apply. *Id.* at 130. Moreover, the court's consideration of the prejudicial impact on the State was improper. See *id.* at 127-28.

5

¶ 14    Instead, in determining the admissibility of exculpatory other-crimes evidence, we look at (1) the similarity between the other crimes and the crime at issue, and (2) whether the evidence contains significant probative value to the defense. *Id.* "Evidence is probative when to the normal mind it tends to prove or disprove a matter at issue." *Camco, Inc. v. Lowery*, 362 Ill. App. 3d 421, 433 (2005). When possession is an important matter at trial, any evidence tending to prove that defendant was not the possessor is probative. See *Turner*, 373 Ill. App. 3d at 132.

¶ 15    Here, the other-crimes evidence was undoubtedly similar to the crime at issue. King had been convicted of aggravated UUWF and UUWF, had a pending UUWF charge at the time of his death, and committed an armed robbery. Moreover, King's prior convictions for crimes involving the possession of weapons have significant probative value as to who possessed the firearm found in the vehicle. King's other crimes make it more likely that he committed the offense in the instant case and cast doubt on defendant's guilt. Therefore, the court abused its discretion by excluding the other-crimes evidence.

¶ 16    In coming to this conclusion, we reject the State's contention that any error was harmless. An error is harmless where the reviewing court can conclude that, absent the error, the outcome of the trial would not have been different. *People v. Carlson*, 224 Ill. App. 3d 1034, 1041 (1992). We cannot say that this is the case, where either King or defendant could have possessed the firearm and neither Simmons nor Miller were able to identify defendant.

¶ 17    Because we find that the court abused its discretion by excluding the other-crimes evidence, we vacate defendant's convictions and remand for a new trial. After reviewing the evidence, we find that it was sufficient to support defendant's convictions. Therefore, double jeopardy does not bar a retrial, though we make no finding as to defendant's guilt. See *People v. Placek*, 184 Ill. 2d 370, 391-91 (1998).

6

¶ 18                                    III. CONCLUSION

¶ 19        The judgment of the circuit court of Tazewell County is vacated and the case is remanded for a new trial.

¶ 20        Vacated and remanded.

¶ 21        JUSTICE PETERSON, dissenting:

¶ 22        Assuming that the court erred by excluding evidence of King's prior crimes, as found by the majority, I nonetheless respectfully dissent as I believe the error is harmless. Specifically, the court itself, in providing the reasons for its decision, stated that King could have been a joint possessor of the firearm and that "the argument that the defense makes that *** King could have stashed that as soon as he got in the car after the club doesn't mean that the Defendant did not possess it simultaneously, either. It could have been both." The court then detailed the evidence that it found established defendant was in possession of the firearm, including: (1) the proximity of defendant to the firearm; (2) the gestures and movements of defendant as the car was driving and as it stopped; (3) defendant telling Simmons to keep driving rather than stop; (4) Simmons's testimony describing defendant's actions as agitated and shifting; (5) Simmons's testimony that she felt defendant kicking something under her seat; and (6) Johnson's testimony describing defendant's "actions as flailing and rocking motions." Essentially, the court was stating that regardless of whether it determined King to be in possession of the firearm, it would have found defendant to be in joint possession of it based on the evidence presented. See *People v. Cook*, 2021 IL App (3d) 190243, ¶ 28 (indicating, with regard to a UUWF conviction, that the firearm's proximity to other individuals in a vehicle did not diminish defendant's immediate and exclusive control but instead indicated joint possession); *People v. Williams*, 98 Ill. App. 3d 844, 849 (1981) ("When the relationship of others to the contraband is sufficiently close to constitute possession,

the result is not vindication of the defendant, but rather a situation of joint possession."). As such, even if defendant presented evidence of King's prior crimes and convinced the court King was in possession of the firearm, the outcome would have been the same. Thus, the error in refusing to admit the evidence was harmless and I would affirm. Based on the foregoing, I respectfully dissent from the majority's judgment vacating defendant's conviction and remanding for a new trial.